CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

8/10/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CHRISTOPHER T.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 6:20-CV-57 |
| | ) |
| ANDREW SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Christopher T. ("Christopher") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1381f. Christopher alleges that the Administrative Law Judge ("ALJ") erred by failing to properly accommodate his moderate impairment with concentration, persistence and pace; and by failing to categorize his ability to interact with others as a marked impairment. I conclude that the ALJ's decision is not supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING in part** Christopher's Motion for Summary Judgment (Dkt. 9), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 12) and **REMANDING** this case for further administrative proceedings consistent with this opinion.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

1

the Commissioner's conclusion that Christopher was not disabled under the Act. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how he determined that Christopher's

2

moderate impairment with concentration, persistence or pace is adequately accommodated by the RFC.

## CLAIM HISTORY

Christopher filed for SSI and DIB on April 4, 2018, claiming that his disability began on December 31, 2012. R. 16, 197–207, 236. The state agency denied Christopher's application at the initial and reconsideration levels of administrative review. R. 69–124. On August 8, 2019, ALJ H. Munday held a hearing to consider Christopher's claim for SSI and DIB. R. 35–64. Counsel represented Christopher at the hearing, which included testimony from vocational expert Robert Jackson. Id. During the hearing, Christopher amended his alleged disability onset date to April 4, 2018, and withdrew his DIB claim because his date last insured pre-dated his amended disability onset date. R. 38–39.

On September 18, 2019, the ALJ entered his decision analyzing Christopher's claim under the familiar five-step process[2] and denying his claim for benefits. R. 16–28. The ALJ found that Christopher suffered from the severe impairments of bipolar disorder, depression, anxiety, and history of substance abuse. R. 19. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 19–22. The ALJ concluded that Christopher retained the residual functional capacity ("RFC")

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curium) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

to perform a full range of work at all exertional levels, with the following non-exertional limitations: perform simple, routine tasks; only simple work-related decisions with few workplace changes; no work at a fixed production rate pace; no interaction with the general public; less than occasional interaction with co-workers (defined as other employees can be in same area, but no team work or interdependence required). R. 22.

The ALJ determined that Christopher could not perform his past relevant work as a helper at a metal shop, but that he could perform jobs that exist in the national economy, such as laundry worker, groundskeeper/gardener, and cleaner. R. 27. Thus, the ALJ concluded that Christopher was not disabled. R. 28. Christopher appealed the ALJ's decision and on July 16, 2020, the Appeals Council denied his request for review. R. 1–4. This appeal followed.

## ANALYSIS

### Mental Impairments

Christopher asserts that the RFC limitations of simple, routine tasks; simple work-related decisions with few workplace changes; and no work at a fixed production rate pace do not sufficiently address his deficits in concentration, persistence or pace. Pl. Br. Summ. J. pp. 3–8. I agree that the ALJ's decision fails to provide the required explanation for how the RFC adequately accommodates Christopher's moderate mental impairments.

In step three of the decision, the ALJ found that Christopher had moderate limitations in the domains of understanding, remembering and applying information; interacting with others; and concentration, persistence or maintaining pace. R. 20–21. Regarding the domain of concentration, persistence or maintaining pace, the ALJ noted the following:

> The claimant stated in July 2018 and November 2018 Function Reports that he needed reminders to go places, but not to take medicine, or to take care of personal needs and grooming. He reported his hobbies/interests included "being anywhere quiet and away from people," and fishing. He asserted he could not pay

4

>   attention long, reporting he was "easily distracted," and had a "bad memory," he
>   did not finish what he started, and did not handle stress or changes in routine well
>   at all. He testified that he was not able to sit and watch television, and he
>   sometimes needed reminders to take medicine.

R. 21.

In step four of his decision, the ALJ noted that Christopher reported that he has bipolar disorder, depression, anxiety, substance abuse disorder/opioid dependence, ADHD, and panic attacks. R. 22. He reported that his jobs never lasted long and he "just never could hold jobs." Id. The ALJ noted that Christopher reported doing tasks such as caring for a dog, preparing simple meals, housecleaning, cleaning laundry, mowing grass, driving several times a week, shopping by computer and mail, and managing money. R. 22. Christopher reported staying away from shopping in person or going out alone because he was paranoid and his social interactions depended on the day because some days he was "totally crazy and try to stay away from people," he was "anti-social," and he did not get along with authority figures. Id. Christopher also testified that he could not pay attention long, he was easily distracted, he had a bad memory and he did not handle stress or changes in routine well. Id. Christopher stated that his conditions affect his ability to talk, hear, memorize, complete tasks, concentrate, understand, follow instructions, and get along with others. R. 22–23.

The ALJ reviewed Christopher's medical records and noted that Christopher has a history of bipolar disorder, depression, anxiety, and prior substance abuse. R. 23. The ALJ noted "the findings on exam were minimal during the period at issue." Id. The ALJ noted that Christopher saw a psychiatrist and psychiatric nurse practitioner for complaints of drug cravings, anxiety, symptoms of worry, paranoia and social avoidance, and bipolar and depression symptoms of hopelessness, mood swings, irritability, and memory problems. Christopher also presented to the emergency room with complaints of chest pain with panic. The ALJ noted that Christopher's

mental status exams reflected poor eye contact, mumbling or pressured speech, anxious and sad mood, blunted or constricted affect, poor insight, restlessness and circumstantial thought processes with paranoid thoughts at times. The ALJ noted that Christopher was otherwise alert and fully oriented, pleasant, cooperative, with intact thought processes, thought content and memory, attention, concentration, no hallucinations, delusions or suicidal/homicidal ideation. Id. The ALJ noted that Christopher was prescribed medications, advised to diet and exercise, and received individual therapy and medication management, with reportedly good results.

The ALJ characterized Christopher's treatment as "routine, conservative, and unremarkable, as he has not required significant emergency room treatment or hospitalizations for his severe impairments." R. 23. The ALJ cited to specific treatment records to demonstrate that Christopher has been treated with medications and other modalities, "which have been relatively effective in controlling his symptoms." R. 23. The ALJ stated that physical examinations have failed to reveal significant ongoing psychological signs, or significant function deficits, as would be expected with the degree of limitation alleged. R. 24.

The ALJ also found that Christopher acted inconsistently and/or made inconsistent statements in the record for someone who claims to be completely disabled. R. 24. Specifically, the ALJ noted Christopher's statements to treatment providers in the record that he "stays busy fixing cars and taking the kids out, and getting in trouble," that he was "doing construction work in a gymnasium," that he was "currently planning to open a small business for more money," that he "recently took a trip to Tennessee with family kids and dogs," that he worked for two weeks helping a guy clean garages, moving old cars, for which he earned 400 dollars. R. 24. The ALJ also noted that Christopher's daily activities were not as limited as would be expected given his alleged disability, relying upon Christopher's statements that he babysat his children when his

girlfriend went back to work; he had a routine around the house with taking care of his kids and a dog; he was exercising; he was seeing his therapist on a regular basis; he was lifting weights; his whole day is a blur; he was working many jobs; he was getting tired out in the sun, and he was riding a motorcycle. R. 24.  The ALJ determined that these inconsistencies suggest that the information provided by Christopher generally may not be entirely reliable. R. 24. The ALJ also noted that Christopher only worked sporadically prior to his alleged onset date and had work activity at a less than substantial gainful level during the alleged disability period. R. 25.

The ALJ reviewed the opinions of state agency physicians.  On August 23, 2018, state agency psychologist Richard Luck, Ph.D., reviewed Christopher's records and determined that his mental impairments were not severe. R. 78–79.  On December 19, 2018, state agency psychologist Stephen Saxby Ph.D., reviewed Christopher's records and determined that he suffered from the severe impairments of depressive disorder, bipolar disorder, anxiety and obsessive-compulsive disorders. R. 102.  Dr. Saxby determined that Christopher had a moderate impairment with interacting with others and concentration, persistence or maintaining pace. R. 117.  Dr. Saxby found that Christopher was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. R. 121.  Dr. Saxby noted, "[i]rrtability, racing thoughts, trouble with focusing, and anxiety, and MSE's support a chronic sad and anxious mood with a constricted affect, restlessness, poor eye contact and insight, and he appeared distracted."

7

R. 121.  Dr. Saxby's opinion does not indicate what RFC would appropriately accommodate Christopher's mental impairments.

The ALJ considered Drs. Luck and Saxby's opinions and found them "not entirely persuasive," explaining that the earlier findings and opinion is not consistent with the evidence of record, including later evidence of significant abnormalities noted in mental status exams. R. 25.  The ALJ concluded, "the undersigned finds these opinions are not entirely persuasive, as the record supports a finding that the claimant is limited to performing work with simple, routine tasks, only simple work-related decisions with few workplace changes, no work at a fixed production rate pace, no interaction with the general public, and less than occasional interaction with co-workers…" R. 25.

In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638.  The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638. The court found error in Mascio because the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty of explanation to adequately review the evidence and explain

8

the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. Indeed, in Shinaberry v. Saul, No. 18-2096, 2020 WL 908887, at *4 (4th Cir. Feb. 26, 2020), the court emphasized that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC. On the contrary, we explained that an 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." Id. (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The Fourth Circuit noted that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The ALJ has the responsibility to address the evidence of record that supports that conclusion and ensure that the hypothetical presented to the vocational expert includes all the limitations set forth in the RFC.

Here, the ALJ's RFC includes more specific limitations than the RFC in Mascio; however, it suffers from the same lack of explanation. "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two. Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019) (citing Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)). The ALJ reviewed Christopher's testimony and treatment records in detail, noted inconsistencies in the records, found the state agency physician

9

opinions "not persuasive," and declared the RFC. The ALJ provided reasons for his conclusion that Christopher's symptoms are not as severe as he alleges. Specifically, the ALJ noted that Christopher had minimal findings on exam, his medications were relatively effective at controlling his symptoms, he has no significant ongoing psychological signs or significant functional deficits, the record contained inconsistent statements regarding his daily activities, and he previously worked sporadically. However, despite these reasons to discount Christopher's testimony, the ALJ found that Christopher suffered from moderate impairments of understanding, remembering or applying information; with concentration, persistence or maintaining pace; and with interacting with others. R. 20–21. The ALJ did not explain how the RFC limitations address these moderate impairments. Specifically, the ALJ did not address how the RFC limitations accommodate Christopher's difficulty to concentrate, persist or perform a task at a certain pace for an 8-hour day.

It is clear in the Fourth Circuit that when it comes to moderate limitations in concentration, persistence or pace, the restrictions such as those set forth in this RFC are not self-explanatory. The Fourth Circuit has repeatedly held that moderate limitations in concentration, persistence or pace are not adequately accounted for by limitations to unskilled and routine tasks without additional explanation. Likewise, restrictions of simple work-related decisions with few workplace changes and no work at a fixed production rate pace require some amount of explanation to address how they adequately accommodate Christopher's moderate mental impairments.

Christopher also asserts that the ALJ erred by failing to define the term "fixed production rate pace," relying upon Thomas v. Berryhill, 916 F. 3d 307 (4th Cir. 2019). In Thomas v. Berryhill and Perry v. Berryhill, the Fourth Circuit remanded cases in which the ALJ used

10

phrases in the RFC similar to work not at a "production-rate pace," without providing further explanation or definition of that phrase. Thomas, 916 F.3d. at 312; Perry v. Berryhill, 765 Fed. Appx. 869, 872 (4th Cir. Aug. 29, 2019). The terms "production-rate" or "pace requirements" in an RFC alone do not warrant remand of an ALJ's decision. Rather, the issue is whether the ALJ provides sufficient information as to how the RFC accommodates the claimant's limitations, and whether the ALJ provides information for the court to determine what the restrictions in the RFC mean. See Virginia F. v. Saul, No. 4:19cv26, 2020 WL 6737876, at *4 (W.D. Va. Nov. 13, 2020) ("Fourth Circuit law is clear that when an ALJ uses a term such as 'fixed production rate pace' in the RFC and fails to adequately explain what she means by that term, remand is appropriate."); Nelson v. Saul, No. 4:18cv163-D, 2019 WL 4748028, at * 5 (E.D.N.C. Aug. 29, 2019) (collecting cases). The ALJ's decision in this case lacks an explanation as to how the limitation of "no fixed production rate pace" accommodates Christopher's moderate mental impairments.

This case is distinguishable from the line of cases holding that an ALJ may rely upon the medical opinions in the record to support the conclusion that a claimant's impairment in concentration, persistence, or pace did not prevent him from performing simple, routine tasks. See Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017). Here, the ALJ found the state agency psychologist opinions "not entirely persuasive," and did not explain which, if any, of their recommendations he adopted or gave weight. R. 25. There are no other mental health opinions in the record reflecting that Christopher can maintain an acceptable pace or perform work on a consistent, sustained basis for an 8-hour workday. Thus, the physician opinions in the record do not provide the required explanation as to how the RFC properly accommodates Christopher's limitations with concentration, persistence or pace.

Overall, the ALJ's decision sufficiently examines the evidence, provides reasons as to why he finds that Christopher's symptoms are not as severe as alleged, but provides no explanation as to how the limitations in the RFC accommodate Christopher's moderate mental impairments. The ALJ's decision does not provide a logical bridge explaining how the RFC properly accommodates Christopher's moderate mental impairments. The ALJ must include an explanation as to why Christopher's moderate deficits with concentration, persistence or pace do not require accommodations in the RFC or why the limitations in the RFC accommodate his mental impairments. Without this explanation and analysis, the Court cannot determine whether the decision is supported by substantial evidence.

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND GRANTING in part** Christopher's motion for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and **REMANDING** this case for further consideration by the ALJ.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any

reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: August 10, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge